LOCAL UNION NUMBER 1638, UNITED
MINE WORKERS OF AMERICA,
et al., Plaintiffs,

v.

CONSOLIDATION COAL COMPANY,
a corporation, Defendant.

Civ. A. No. 75-2-W.

United States District Court,
N. D. West Virginia,
Wheeling Division.

July 11, 1975.

John W. Cooper, Wellsburg, W. Va.,
for plaintiffs.

Furbee, Amos, Webb & Critchfield,
Fairmont, W. Va., Rose, Schmidt & Dixon, Pittsburgh, Pa., for defendant.

MEMORANDUM ORDER

MAXWELL, Chief Judge.

This civil action is commenced under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 (1970). Plaintiffs are Local Union No. 1638, United Mine Workers of America, Richard Truex, and District 6, United Mine Workers of America. The primary purpose of this civil action is to compel submission of an existing dispute between the parties to binding arbitration, in accordance with grievance-arbitration procedures set forth in a collective bargaining agreement between Plaintiffs and Defendant, Consolidation Coal Company. Plaintiffs

additionally seek a preliminary injunction compelling Defendant to reinstate Plaintiff, Truex, to his position of employment pending disposition of this cause as well as a judgment for costs, disbursements and attorney fees incurred in connection with this action.

The factual background of this case is that Plaintiff Truex was employed by the Defendant at its McElroy Mine in Marshall County, West Virginia, for a period extending at least from January, 1973, to October 23, 1974. Having missed three consecutive work days, immediately prior to October 23, 1974, Truex either resigned or was discharged from his employment with the Defendant. On October 24, 1974, Truex returned to the Defendant's McElroy Mine seeking reinstatement. This was refused as was a similar request on October 25, 1974. On October 31, 1974, the mine committee of the Plaintiff, Local Union No. 1638, presented a written grievance to Defendant's officials claiming that the termination of Truex's employment was a wrongful discharge resulting from duress imposed on Truex by Defendant's superintendent, Norris Brooks. Defendant's officials refused to process the grievance claiming that since Truex had resigned his employment he was no longer an employee covered by the collective bargaining agreement and therefore Defendant was not obligated to arbitrate his grievance.

The issue presented here is whether an arbitratable grievance, cognizable under the grievance procedures of the National Bituminous Coal Wage Agreement of 1971 (hereinafter Agreement), to which all parties hereto are signatories, is presented when the employee alleges an improper discharge from employment and the employer claims, on the other hand, voluntary termination.

The grievance procedure of the Agreement is found in Article XVII—"Settlement of Disputes", Section (b), which states in part:

Should differences arise between the mine Workers and the Employer as to the meaning and application of the provisions of this Agreement or should differences arise about matters not specifically mentioned in this agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time.

A five step grievance procedure is then outlined.

The issue before the Court involves a question for which there is no clear answer in the Agreement. Nothing therein describes or defines "discharge" or "voluntary termination". While this distinction was not specifically covered in the Agreement, Article XVII, Section (b) provides for the resolution of such ambiguities. Obviously there is a "difference . . . between the Mine Workers and the Employer as to the meaning and application of the provisions of [the] Agreement . . ." or a " . . . difference . . . about matters not specifically mentioned in [the] Agreement." Where such differences arise Article XVII provides a five step procedure to resolve them and provides that " . . . an earnest effort shall be made to settle such differences at the earliest practicable time."

The importance of submitting grievances, such as the one here in question, to Article XVII resolution is underlined by Article XX—"Maintain Integrity of Contract", which provides in part:

The United Mine Workers of America and the Employers agree and affirm that they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement of Disputes' article of this Agreement unless national in character . . .

Congress has indicated a preference toward having grievances over application or interpretation of a collective-bargaining agreement settled by machinery agreed upon by the parties to

the agreement. Section 203(d) of the Labor Management Relations Act of 1947, as amended 29 U.S.C. § 173(d), states in part:

> Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.

In considering whether these parties have agreed to the submission of this particular issue to arbitration, and in carrying out the congressional policy favoring settlement of disputes through machinery provided by the parties, it must be recognized that there is a presumption favoring arbitration and this may be rebutted only where it can be said with positive assurance that the arbitration clause is *not* susceptible of an interpretation that covers the dispute. "Doubts should be resolved in favor of coverage." *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Monongahela Power Co. v. Loc. No. 2332, Int. Bro. of El Wrkrs.,* 484 F. 2d 1209 (4th Cir. 1973).

As the Supreme Court obviously applied this presumption to a coal mine safety dispute, it was said, "A collective-bargaining agreement cannot define every minute aspect of the complex and continuing relationship between the parties. Arbitration provides a method for resolving the unforeseen disagreements that inevitably arise." *Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 378, 94 S.Ct. 629, 637, 38 L.Ed.2d 538 (1974). The issue before this Court is such an unforeseen disagreement, stemming from a failure to define one "minute aspect" of the relationship between the parties and, as the Supreme Court indicated in *Gateway,* arbitration provides a method for its resolution.

In suits to compel arbitration of a dispute, pursuant to a collective bargaining agreement providing for arbitration of all disputes between the parties as to the meaning and application of the provisions of the agreement, the court is limited to a determination of whether the party seeking arbitration establishes a claim which, on its face, is governed by the contract. *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Accordingly, the Plaintiffs' prayers for an immediate injunction compelling reinstatement of Truex and for a judgment awarding the costs and attorney fees are matters which may appropriately follow arbitration proceedings.

Section 301 of the Labor Management Relations Act of 1947 encourages federal courts to order specific performance to enforce arbitration provisions in collective-bargaining agreements. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is therefore

Ordered that all parties hereto immediately engage in meaningful and full arbitration as provided for in Article XVII of the National Bituminous Coal Wage Agreement of 1971, and that upon conclusion of the steps provided in said Agreement the parties shall inform the Court in writing of the disposition reached.