■ In the Matter of the BOARD OF EDUCATION, WEST BABYLON UNION FREE SCHOOL DISTRICT, Respondent, v WEST BABYLON TEACHERS ASSOCIATION, Appellant. (And Three Similar Actions.)—In four proceedings to stay arbitration, the appeals are from four judgments of the Supreme Court, Suffolk County, each entered April 9, 1979, which granted the petitions. Judgments reversed, on the law, with one bill of $50 costs and disbursements to cover the four appeals, applications denied and the parties are directed to proceed

to arbitration forthwith. No fact questions were presented for review. The collective bargaining agreement between the parties provides, in pertinent part: "ARTICLE IV TEACHER RIGHTS * * * B. Discipline of teachers which may result in suspension, loss of pay or loss of position shall be in accord with the provisions of Section 3012 of the Education Law. No teacher shall be summarily disciplined, reduced in rank or compensation without just cause. * * * ARTICLE XV JOB SECURITY PART II—JOB SECURITY A. The Board of Education retains, and must retain, its legal responsibility for the educational program of the children of the West Babylon Schools. The Board of Education recognizes the concern of the West Babylon Teachers Association, Inc., for the welfare of the teachers of our District. The Board of Education shares this concern. Any teacher whose position is eliminated due to a change in curriculum or the curtailment or reduction of a program will be offered another teaching position in the District. In the event there is no available position for which such teacher is employable by reason of certification requirements, he/she shall be employed as a permanent substitute teacher until such position is available. In no event, shall he/she suffer any loss or diminution in salary, rights or other benefits. Such teacher shall also be offered the first opportunity for re-employment that may occur in the grade and/or subject area in which he/she had previously taught." The agreement provides a five-step grievance procedure culminating in final and binding arbitration. The agreement covered the period July 1, 1976 through June 30, 1978. Prior to the expiration of the agreement, the petitioner board of education abolished the positions of Director of Music and Director of Guidance, effective September 5, 1978, and the position of Director of Nurses. The board also eliminated the position of School Nurse-Teacher, Junior High School, creating the position of Registered Nurse, Junior High School, and abolished the Driver Education, Senior High School program, which was to be replaced by a driver education summer school program subcontracted to a private company. The appellant union filed four separate grievances, each of which was denied. When the union then demanded arbitration, the board successfully applied for a stay in each case. The question of arbitrability in the public sector is subject to a two-tiered analysis. It must first be determined whether there is anything in statute, decisional law or public policy which would preclude a board of education from agreeing to refer the dispute to arbitration. At the second level, the language of the agreement is examined to determine whether the parties' dispute falls clearly and unequivocally within the class of claims agreed to be referred to arbitration (*Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509). On the first level, there is no statute, controlling decisional law or other source of public policy which prohibits a public employer from voluntarily agreeing to submit controversies over "job security" or staff size to arbitration, whether the disputed determination is to be effective during the lifetime of the contract (*Matter of Board of Educ. v Yonkers Federation of Teachers*, 40 NY2d 268, 274), or after expiration of the contract (see *Matter of Board of Educ. v Pearl River Teachers Assn.*, 71 AD2d 654). As to the second level, the parties agreed to submit a "grievance", defined as "*any matter affecting* the terms and conditions of employment of a teacher or group of teachers" (art 11, § 4.1; emphasis supplied), to final and binding arbitration. The agreement defines terms and conditions of employment as "*salary, wages, hours and other* terms and conditions of employment" (art 2, subd A, par 4; emphasis supplied). This language is sufficiently broad to encompass the current controversies. The fact that the full scope of the

relief requested by the union might, if granted by the arbitrator, lead to an award which would be subject to vacatur for public policy reasons does not mandate a stay of arbitration (see *Board of Educ. v Three Vil. Teachers Assn.*, 72 AD2d 542). Reversal is therefore mandated. O'Connor, J. P., Rabin, Gulotta and Margett, JJ., concur.