301 S.E.2d 860

**BAKER MINE SERVICE, INC., etc., et al.**

v.

**C.R. NUTTER, Judge, etc., and Daniel C. Minnix.**

**No. 15810.**

Supreme Court of Appeals of West Virginia.

March 31, 1983.

Boyd L. Warner, Berry, Waters, Warner & Harris, Clarksburg, for petitioner.

Jerald E. Jones, Jones, Williams, West & Jones, Clarksburg, for respondent.

PER CURIAM:

Petitioners, Baker Mine Service, Inc. and Baker International Corp., seek, through their original petition for a writ of prohibition, to prohibit respondents C.R. Nutter, Judge of the Circuit Court of Harrison County, and Daniel C. Minnix from proceeding with a civil action brought in the Circuit Court of Harrison County by respondent Minnix against petitioners. Petitioners presented this 12(b)(6) motion to dismiss to the trial judge, who noted that there were some controverted factual issues, and denied the motion. The terms of the contract between the parties is undisputed, and petitioners contend that the substance of the civil action is a dispute which is arbitrable under the contract between petitioners and respondent Minnix. We agree, and award the writ as moulded.

There are three separate documents of importance in this case, which, taken together, embody an agreement between respondent Minnix and his father, J.C. Minnix, and petitioner Baker International. These documents are the plan of reorganization and merger, the escrow agreement, and the covenant not to compete. The plan of merger and reorganization, hereinafter referred to as the plan, by which the Minnixes sold several corporations to Baker International, was concluded on December 1, 1980. Article 7 of the plan provided that J.C. and Daniel C. Minnix would indemnify Baker International against any claims arising from a breach of any warranty or covenant of the plan. The Minnixes were paid in Baker International stock.

A portion of the purchase-price stock was retained by Baker International pursuant to an escrow agreement between the parties. The escrow agreement provided, in pertinent part:

"[T]he Escrow Shares shall be released ... and distributed to the Warranting Shareholders [the Minnixes] on November 30, 1981; provided, however, such Escrow Shares shall not be released and distributed if [Baker International] shall give to the Warranting Shareholders either the 'indemnity notice' or the 'retention notice,' as defined in section 3 herein, prior to the such anniversary date."

Finally, the Minnixes entered in a covenant not to compete, which covenant was to be effective for a five-year period from the December 1, 1980 closing. The other details of the covenant are not germane here.

On November 24, 1981, Baker International, by letter, gave the Minnixes a timely retention notice as provided in the escrow agreement. The letter communicating the notice specified a suspected breach of the covenant not to compete as the reason for retention. A second letter from Baker International to respondent Minnix, dated March 8, 1982, indicated that the alleged breach of the covenant not to compete was being dropped as a reason for retaining the escrow stock, and that J.C. Minnix's escrow stock would be released. The letter continued that respondent Daniel C. Minnix's escrow stock would be retained due to alleged breaches of his fiduciary duty to Baker Mine Services, Inc. as its Vice-President in charge of operations.

Respondent Minnix points out that the alleged breach of fiduciary duty was first raised after November 30, 1981, and contends that it was outside the arbitration clause agreed to by the parties. He relies upon language in Article 7 of the plan which reads as follows: "[W]arranties and covenants of the [Minnixes] shall automatically terminate with respect to all claims (as hereinafter defined) of which the [Min-

nixes] have not been given notice by [Baker International] by November 30, 1981."

Petitioners rely upon the broadly worded arbitration clauses in the plan and the escrow agreement. The plan provides that "[a]ny controversy or claim arising out of or relating to this Plan or Escrow Agreement, or the breach of this Plan or Escrow Agreement shall be settled by arbitration." The escrow agreement provides, in section 3.03, titled "Arbitration Exclusive Remedy", that the Minnixes "may only dispute the reasonableness of such setoff or retention by initiating an arbitration proceeding."

It is certainly possible for the parties to a contract to carefully limit the duty to arbitrate to specific subjects or time periods. The parties to the arbitration provisions considered herein did not limit the duty to arbitrate, but, rather, expressly provided that arbitration was the exclusive remedy for any controversy or claims relating to any part of the transaction.

In Syllabus Point 1 of *Board of Education v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977), we held, in pertinent part, "[w]here parties to a contract agree to arbitrate ... all disputes ... arising under the contract, and where the parties bargained for the arbitration provision, such provision is binding, and specifically enforceable."

Furthermore, this Court noted in Syllabus Point 3 of *State ex rel. Ranger Fuel v. Lilly*, 165 W.Va. 98, 267 S.E.2d 435 (1980), that even the termination of the contract between the parties does not necessarily extinguish the duty to arbitrate; "[i]t is the general rule that the duty to arbitrate under an arbitration clause in a contract survives the termination of the contract."

We have considered the arbitration clauses and carefully reviewed the entire agreement between the parties. The very broad language of the arbitration provisions convince us that Baker's claim is a proper subject for arbitration.

Petitioners pray that respondent Judge Nutter be prohibited from proceeding upon respondent's civil action No. 82–C–438–1.

In *Ranger Fuel*, we prohibited further proceedings "until such time as the parties to that proceeding have completed arbitration of their disputes." 165 W.Va. at 102, 267 S.E.2d at 438. This is the appropriate relief in this case as well, and we award the writ prohibiting further proceedings in the Circuit Court of Harrison County in Civil Action No. 82–C–438–1 until the parties to that proceeding have completed arbitration of their dispute pursuant to Article 9.08 of their plan.

Writ awarded as moulded.