365 S.E.2d 76

**LOCAL DIVISION NO. 812 OF CLARKSBURG, WEST VIRGINIA, OF the AMALGAMATED TRANSIT UNION**

v.

**CENTRAL WEST VIRGINIA TRANSIT AUTHORITY.**

**No. 17258.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1987.

Joseph J. Pass, Pittsburgh, Pa., Stanley Hostler, Charleston, for Local Div. No. 812.

J. Patrick Bower, Clarksburg, for Central West Virginia Transit Authority.

McHUGH, Justice:

This case is before this Court upon an appeal from an order of the Circuit Court of Harrison County which refused to grant the appellant's petition for a mandatory injunction requiring the appellee to submit the matter of an employee discharge to arbitration pursuant to the parties' collective bargaining agreement and *W. Va. Code*, 8–27–21(g) [1969].

The appellant is Local Division 812 of Clarksburg, West Virginia, of the Amalgamated Transit Union, an unincorporated labor association. The appellee is the Central West Virginia Transit Authority, an urban mass transit authority created pursuant to *W. Va. Code*, 8–27–1 to –27, as amended.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

I

Donald Moore was employed as a driver by the appellee and was a member of the appellant labor organization. On November 12, 1982, he received notice from the appellee's general manager, John Hostut-

ler, that he was being terminated for failure to remit money to the appellee from a charter trip on which he had driven and collected money from passengers. On November 19, 1982, Moore filed a grievance with the authority pursuant to a negotiated collective bargaining agreement between the parties.[1] Hostutler replied to the grievance on November 26, 1982, and reaffirmed his decision to discharge Moore.

Shortly thereafter, a union officer contacted Hostutler and informed him of the union's decision to pursue the matter to arbitration. Hostutler refused to proceed to arbitration stating that the appellant had failed to adhere to the contractual provisions of the collective bargaining agreement.

On December 16, 1982, the union president responded to Hostutler's refusal to arbitrate by requesting a meeting of the Transit Authority members pursuant to the grievance procedure established in the collective bargaining agreement, as soon as possible. This letter also reflected the appellant's intention to proceed to arbitration, if necessary. On December 27, 1982, Hostutler advised the union president that his

letter requesting a meeting of the Transit Authority members was presented to the Chairman of the Board of Directors of the Central West Virginia Transit Authority.

Subsequent correspondence between the parties essentially reveals that the appellee refused arbitration because the union failed to adhere to the contractual terms of the collective bargaining agreement by first appealing to the Transit Authority members from the initial grievance filed against the general manager for his decision reaffirming Moore's discharge. The appellee maintained that this appeal should have been taken within ten days from Hostutler's letter reaffirming Moore's discharge. Hostutler's response to the employee's grievance was dated November 26, 1982, while the letter requesting the meeting was not written until December 16, 1982.

Another exchange of correspondence between the parties ensued, with counsel for the union requesting again that the appellee proceed to arbitration. Once again, the appellee refused to submit to arbitration but did sign the Federal Mediation and Conciliation Service form which with the authorized signature allowed the service to

---

1. On July 1, 1981, the parties entered into a collective bargaining agreement. The pertinent provisions concerning the arbitration of grievances provide as follows:

*Clause 1. Arbitration of Grievances.* All grievances arising between the Transit Authority and union shall first be submitted in writing to the manager of the Authority to which the matter relates within ten (10) days after the alleged grievance arises. If a satisfactory adjustment is not reached with the head of the Authority, the grievance committee of the union shall have the right to appeal to the authority members, who shall give an answer within ten (10) days, by requesting permission from the General Manager who will submit [the] grievance to board members at [the] next scheduled board meeting not to exceed thirty (30) days.

If a satisfactory adjustment is not reached, then the grievance committee of the union shall have the right to appeal to the manager, directors or a duly [authorized] representative of the Authority, by request of either party within ten (10) days, exclusive of Sundays, and Holidays to present their grievance to a [B]oard of Arbitration.

The Board of Arbitration shall consist of three parties, one to be selected by the Authority and one by the union and the third to be selected by the two arbitrators already selected.

If the two arbitrators selected are unable to agree upon the third arbitrator within a period of ten (10) days, exclusive of Sundays and Holidays, then the United States Conciliation Service shall select the third arbitrator from the United States Board of Arbitrators.

Expense or compensation for any Board of Arbitration shall be borne as follows:

Each party hereto shall bear the expense of the arbitrator of its selection and jointly bear the expense of the third arbitrator. All other expenses of the arbitrators shall be borne equally by the parties hereto. The finding of a majority of any arbitration board as provided herein shall be final and binding upon the parties hereto.

*Clause 2.* If after a complete and thorough investigation it is found that any employee has been improperly suspended or discharged and is not guilty of the charge for which action was taken, he shall be reinstated in his former position and seniority rights with full compensation for the time lost on account of such action of the company. However, the above clause pertains only to the findings of a board of arbitrators, and not Local 812 of A.T.U. or Central West Virginia Transit Authority.

provide the parties with a list of arbitrators. The appellee then informed the union that they would not participate in arbitration.

In response, the appellant sought a mandatory injunction in circuit court to require the appellee to proceed to arbitration upon the grievance of Donald Moore. A hearing was subsequently held on this petition, and an order was entered denying the requested relief. Thereafter, the appellee filed a motion to dismiss this appeal based on untimeliness of the appeal and the lack of jurisdiction of this Court to consider the appeal. This Court denied that motion.

## II

The issue before us in this appeal is whether an employee discharge is a subject required to be submitted to arbitration pursuant to the parties' collective bargaining agreement and *W.Va.Code*, 8–27–21(g) [1969].[2]

The appellant contends that the employee's discharge is arbitrable because the language of the collective bargaining agreement itself and *W.Va.Code*, 8–27–21(g)

[1969] encompasses discharge as a "labor dispute relating to the terms and conditions of employment which is not settled through any established grievance procedure."[3] The appellee, on the other hand, maintains that neither the language of the collective bargaining agreement nor the pertinent statutory authority provide for arbitration of an employee discharge because a "discharge" is not a term or condition of employment.

In *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme Court of the United States created a strong presumption favoring arbitration in contract disputes.[4] *See Board of Education v. W. Harley Miller, Inc.*, 160 W.Va. 473, 483 n. 4, 236 S.E.2d 439, 445 n. 4 (1977). The court noted that "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration should not be denied. *Id.* at 582–83, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417. Doubts as to whether a particular grievance is arbitrable should be resolved in favor of arbitration. *Id.* at 583, 80 S.Ct.

---

**2.** One of the errors raised by the appellee is that the appellant, as an unincorporated labor association, has no standing to institute this action without naming a member or members of the association as parties to the action. The Urban Mass Transportation Authority Act, specifically, *W.Va.Code*, 8–27–21(g) [1969] provides for collective bargaining between the authority and employees in the case of a labor dispute relating to terms and conditions of employment not settled through any established grievance procedure. Obviously, the parties need a mechanism to enforce this section. Therefore, the protective provisions of *W.Va.Code*, 21–1A–1 to –8, as amended, the Labor-Management Relations Act for the Private Sector, must be utilized. *W.Va.Code*, 21–1A–7(c) [1971] provides, in pertinent part, that "[n]othwithstanding any other provision of law or rule to the contrary, any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents." *Cf. City of Fairmont v. Retail, Wholesale & Department Store Union*, 166 W.Va. 1, 15, 283 S.E.2d 589, 597 (1980) (public labor disputes not covered by *W.Va.Code*, 21–1A–7 [1971] ).

The remaining errors raised by the appellee are without merit.

**3.** *W.Va.Code*, 8–27–21 [1969] provides in relevant part:

Whenever any authority acquires any existing system pursuant to the provisions of this article, the employees of such system shall be protected in the following manner:

. . . .

(g) The authority owning a system, or any of the employees of any system owned by the authority, shall, in the case of any labor dispute relating to the terms and conditions of employment which is not settled through any established grievance procedure, have the right to submit the dispute to final and binding arbitration by a board of arbitration consisting of three arbitrators, one arbitrator to be chosen by the authority, one by the employee and the third to be chosen by the two arbitrators selected by the authority and the employee. A decision of a majority of the members of the board of arbitration shall be final and binding on the parties. . . .

**4.** We recognize that several of the cases cited in this opinion involve the federal courts' application and interpretation of the National Labor Relations Act, 29 U.S.C. §§ 141 to –188 (1982). Corollary arguments are presented in the case before us and the principles established in the cited federal precedents are persuasive.

at 1353, 4 L.Ed.2d at 1418. Specifically, the court held that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where ... the exclusion clause is vague and the arbitration clause quite broad." *Id.* at 584–85, 80 S.Ct. at 1354, 4 L.Ed.2d at 1419. *See also Monongahela Power Co. v. Local 2332 International Brotherhood of Electrical Workers*, 484 F.2d 1209, 1213 (4th Cir.1973); *Chicago Area Vending Employers Association v. Local 761 International Brotherhood of Teamsters*, 564 F.Supp. 1186, 1193 (N.D.Ill. 1983); *Cox v. Guy F. Atkinson Co.*, 468 F.Supp. 677, 681 (N.D.Ind.1979); *Local 1638, United Mine Workers v. Consolidation Coal Co.*, 396 F.Supp. 971, 973 (N.D.W.Va.1975).

■ In adherence to the substantial precedent favoring such a rule, we hold that in determining whether or not the parties to a collective bargaining agreement have agreed to submit a particular issue to arbitration, it must be recognized that there is a presumption favoring arbitration, and this presumption may be rebutted only where it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

The collective bargaining agreement in the case before us contains broad language referring "[a]ll grievances arising between the Transit Authority and the Union ..." to arbitration. The focus then turns to the protective provisions of *W.Va.Code*, 8–27–21(g) [1969] which are similarly broad in scope: "[I]n the case of any labor dispute relating to the terms and conditions of employment which is not settled through any established grievance procedure, [employees] have the right to submit the dispute to final and binding arbitration...." Essentially, the question becomes whether an employee dismissal is a "labor dispute relating to the terms and conditions of employment."

Several courts considering the issue before us in this case have concluded that dismissal of individual employees or the termination or nonrenewal of employment contracts relate to "terms and conditions of employment" and under the pertinent statutory provisions and the particular collective bargaining agreements involved, such grievance should be submitted to arbitration. *Santos v. City of Brawley*, 162 Cal. App.3d 203, 207, 208 Cal.Rptr. 297, 299 (1984); *Board of Police Commissioners v. White*, 171 Conn. 553, 559, 370 A.2d 1070, 1073 (1976); *Board of Education v. West Babylon Teachers Association*, 72 A.D.2d 766, 767, 421 N.Y.S.2d 387, 389 (1979); *Richards v. Board of Education*, 58 Wis.2d 444, 460b, 206 N.W.2d 597, 606 (1973). *See generally* annotation, *Bargainable or Negotiable Issues in State Public Employment Labor Relations*, 84 A.L.R.3d 242, §§ 21, 22 (1978); 51A C.J.S. *Labor Relations* § 439, at 400–01 (1967).

In *Board of Police Commissioners v. White, supra*, the city and its board of police commissioners brought suit to enjoin arbitration proceedings arising from the dismissal of two police officers. The Supreme Court of Connecticut applied a state statute which imposed on municipal employers the duty to bargain collectively with designated employee organizations with respect to "wages, hours and other conditions of employment." The court concluded that the above clause could be construed to include the question whether a person shall continue in employment, and that accordingly, the city had both statutory authority and a positive duty to bargain collectively concerning conditions of employment, including questions of discharge. The court affirmed a judgment denying the injunction.

The Supreme Court of Wisconsin has similarly concluded that a grievance procedure established by a collective bargaining agreement, and relating to employee dismissals fell within the definition of "wages, hours and conditions of employment" within the meaning of the statute requiring public employers to meet and confer with their employees with respect to such subjects. *Richards v. Board of Education, supra. See also Beloit Education Associ-*

*ation v. Employment Relations Commission*, 73 Wis.2d 43, 242 N.W.2d 231 (1976).[5]

In syllabus point 1 of *Board of Education v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977), this Court held, in pertinent part, "[w]here parties to a contract agree to arbitrate ... all disputes ... arising under the contract, and where the parties bargained for the arbitration provision, such provision is binding, and specifically enforceable, ..." *Accord*, syl. pt. 1, *Baker Mine Service, Inc. v. Nutter*, 171 W.Va. 770, 301 S.E.2d 860 (1983); syl. pt. 1, *State ex rel. Ranger Fuel Corp. v. Lilly*, 165 W.Va. 98, 267 S.E.2d 435 (1980).

■ Accordingly, where a transit authority has entered into a collective bargaining agreement to submit "[a]ll grievances arising between the Transit Authority and union" to arbitration and *W. Va. Code*, 8–27–21(g) [1969] provides that the transit authority or any employees thereof have the right to submit to final and binding arbitration "any labor dispute relating to the terms and conditions of employment which is not settled through any established grievance procedure," an employee discharge falls within the definition of "terms and conditions of employment" and, accordingly, the matter of an employee discharge should be submitted to arbitration.[6]

### III

An ancillary issue before us in this case is whether the appellant's alleged failure to follow the grievance procedure embodied in the parties' collective bargaining agreement operates to bar arbitration altogether.

The United States Supreme Court's case of *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), is instructive in this regard. In that case, the court resolved a split of authority that had existed among the circuits and concluded that procedural questions are for the arbitrator. *See also Tobacco Workers International Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 953 (4th Cir. 1971); *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735, 737 (7th Cir.1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).

In *John Wiley*, the particular collective bargaining agreement involved provided for arbitration as the third stage of the grievance procedure. "Step 1" of the procedure provided for a conference between the affected employee, a union steward and the employer, officer or exempt supervisory person in charge of his department. In "Step 2," the grievance was to be submitted to a conference between an officer of the employer, or the employer's representative designated for that purpose, the union shop committee and/or a representative of the union. In the event that the grievance was not resolved in Step 2, arbitration was reached under "Step 3." 376 U.S. at 555–56, 84 S.Ct. at 917–18, 11 L.Ed.2d at 908. In *John Wiley*, the petitioner argued that because Steps 1 and 2 had not been followed, and since the duty to arbitrate arose only in Step 3, it had no duty to arbitrate the dispute.

The appellee in the case before us makes a similar contention regarding the procedure to be followed rather than the substance of the appellant's grievance. Specifically, the appellee asserts that the appellant skipped Step 2 of the grievance procedure discussed *infra* by failing to appeal to the transit authority members within ten days of receipt of the general manager's letter reaffirming Moore's discharge. The facts here are analogous to those presented in *John Wiley*. The collective bargaining

---

5. *Richards, supra,* involved a dispute over the contractual and constitutional rights of a teacher who was dismissed from his duties as a basketball coach. Despite the court's observation noted *supra* in the body of this opinion, the court noted that the term "dismissal" meant removal from employment rather than the failure to renew a contract under the same terms, so that the failure to renew was not subject to a grievance procedure under the terms of the existing collective bargaining agreement.

6. Our decision in this case is buttressed by the strong language embodied in clause 2 of the parties' collective bargaining agreement concerning suspension or discharge. *See* note 1, *supra.*

agreement between the parties provides in Step 1 that the grievance should first be submitted in writing to the manager of the authority. Provided that a "satisfactory adjustment" is not reached at that initial level, Step 2 provides that the grievance committee of the union shall have the right to appeal to the authority members. At that point, if a "satisfactory adjustment" is not attained, arbitration is reached in Step 3.

 We find persuasive the language of the Supreme Court in *John Wiley, supra:*

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.... It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other....

> Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator....

376 U.S. at 557, 84 S.Ct. at 918, 11 L.Ed.2d at 908–09. We agree and hold that procedural questions arising from a labor dispute and bearing on its final disposition are matters to be determined by an arbitrator. *Cf. Jackson Enterprises, Ltd. v. Procious Public Service District,* 178 W.Va. 574, 579–580, 363 S.E.2d 460, 465–466 (1987). Thus, the issue as to whether the appellant did, in fact, skip Step 2 of the grievance procedure and, if so, the remedy to be applied is a procedural question to be decided by the arbitrators considering the substantive matter of Moore's discharge.

For the foregoing reasons, the judgment of the Circuit Court of Harrison County is reversed, and this case is remanded for further proceedings consistent with the principles set forth in this opinion.

Reversed and remanded.