Louise RAINES, President of the Professional Educators Association of Ketchum; Marilyn Dixon; and the Professional Educators Association of Ketchum, an unincorporated association, Appellees,

v.

INDEPENDENT SCHOOL DISTRICT NO. 6 OF CRAIG COUNTY, Oklahoma; and Tommy McGlasson, Kenith McSpadden, Gary Carroll, Jerry Bogle, and Kenneth McCord, as Members of the Board of Education of Independent School District No. 6 of Craig County, Oklahoma; and Ron Gurley, as Superintendent of Independent School District No. 6 of Craig County, Oklahoma, Appellants.

No. 66036.

Supreme Court of Oklahoma.

July 17, 1990.

As Corrected July 26, 1990.

Oklahoma Educ. Ass'n by Richard B. Wilkinson, Oklahoma City, for appellees.

Rosenstein, Fist & Ringold by J. Douglas Mann and Jerry A. Richardson, Tulsa, for appellants.

HODGES, Justice.

This appeal requires resolution of the following question: Does a binding grievance arbitration provision in a collective bargaining agreement between a school board and a teachers' organization impermissibly delegate the school board's

authority to reprimand a teacher? We answer in the affirmative and reverse the judgment of the trial court.

Appellees in this matter are a school teacher, Marilyn Dixon, and her bargaining agent, the Professional Educators Association of Ketchum (PEAK). Appellants are the Ketchum School Board (Board), its individual members and its superintendent.

The dispute centers around a binding grievance arbitration provision in a collective bargaining agreement between the Board and its teachers. Binding arbitration is the last step in the four-stage teacher grievance procedure. In the first three stages the grievant attempts to resolve the grievance with a school administrator, the superintendent and the Board.

Dixon's grievance resulted when she was reprimanded by the school superintendent and a copy of the reprimand was placed in her personnel file. Unsatisfied with the result in the first three stages of the grievance procedure, Dixon filed a request for arbitration. The Board refused to participate in the final stage unless the arbitrator's decision would be advisory only. Dixon and PEAK obtained a writ of mandamus from the district court compelling the Board to submit to binding arbitration. The trial court rejected the argument that the arbitration provision impermissibly delegated the Board's authority.

█ The recent decision in *Mindemann v. Independent School District No. 6*, 771 P.2d 996 (Okla.1989), resolves this controversy. *Mindemann* recognized two major limitations on a school board's ability to include certain terms in a collective bargaining agreement. First, a school board's managerial prerogative cannot be bargained away. *Id.* at 1002. Second, a school board may not "negotiate a term in a collective bargaining agreement which involves the delegation of a statutory duty or the surrender of discretion vested in the board by statute." *Id.* at 1000. In *Mindemann* both limitations prevented binding arbitration of a school board's decision not to reemploy a probationary teacher and its decision to discontinue a teacher's extra-

duty coaching assignment. *Id.* at 1001–02. Both limitations also prevent a school board from delegating its authority to reprimand a teacher.

The authority to discipline an employee lies at the heart of the managerial prerogative. To subject disciplinary decisions to binding arbitration would seriously interfere with a school board's ability to maintain adequate standards and discipline among its teachers. Management decisions would be placed in the hands of non-elected arbitrators rather than principals and superintendents who are supervised by an elected school board.

█ Further, under title 70, sections 6–103 through 6–103.4, the power to admonish, suspend, dismiss or not reemploy a teacher is vested in a school board or an administrator under the board's supervision. A school board's abdication of these responsibilities, by its agreement to submit these decisions to binding arbitration, is repugnant to the statutory policy implicit in those sections. *See Mindemann*, 771 P.2d at 1002.

█ The authority to discipline a teacher is nondelegable and not bargainable. The trial court erred in requiring the Board to comply with the binding arbitration provision. The decision of the trial court is REVERSED.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER and SIMMS, JJ., concur.

DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., dissent.

OPALA, Vice Chief Justice, concurring.

I concur in the court's opinion and in its judgment. I write separately to counsel once again against facile safe-harbor assumptions by voicing my genuine concern over the constitutional efficacy of a promise-based arbitration clause here in contest. It appears to offend Oklahoma's constitutional prohibition against *express or implied contractual* waiver of benefits con-

ferred by the state's fundamental law.[1] Art. 23 § 8, Okl. Const.[2] Unlike other forms of waiver known to law, the *contractual waiver* interdicted by this section is one in the form of a *promise to surrender a state constitutional benefit that may become one's due in the course of the parties' contractual dealings.*[3]

A general provision in a contract that all or some differences between the parties arising under its terms are to be settled by arbitration *must* surely be acknowledged as the promisor's express or implied "waiver" of his/her constitutionally conferred benefit of reasonably unimpeded access to court for dispute resolution in accordance with the ordinary course of law. See Art. 2, §§ 6, 7[4] and 19,[5] and Art. 5 § 46, Okl. Const.[6] All these provisions of our state's fundamental law, when construed together, unmistakably establish a "benefit" of equal treatment, under the applicable legal process, for resort to courts by *all* persons with litigable disputes. The other sections of our constitution—cited in the dissent as evidence of the drafters' unqualified *imprimatur* for arbitration as a method of dispute settling—Art. 5 § 46,[7] Art. 6 § 21[8] and Art. 9 § 42,[9]—are not inconsistent with

---

1.  For reference to my previous comment on this issue see *Long v. DeGeer,* Okl., 753 P.2d 1327, 1330 (1988) (Opala, J., concurring).

2.  The terms of Art. 23 § 8, Okl. Const., provide:
    *"Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."* (Emphasis added.)

3.  Waiver is the intentional relinquishment of a known right. *Faulkenberry v. Kansas City Southern Ry. Co.,* Okl., 602 P.2d 203, 206–207 (1979); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *It is not a contract, Bertelsen & Petersen Engineering Co. v. United States,* 60 F.2d 745, 747 (1st Cir.1932); *it may be established by acts, conduct, declarations and even silence, as well as by express consent. Mitchell v. Kemp & Burpee Mfg. Co.,* 218 F. 843, 846 (3rd Cir.1915).
    For an explanation of the distinctions between waiver and election, estoppel, forfeiture, release and contract, see Ewart, *Waiver,* 53 Can.L.J. 206 (1917).

4.  The terms of Art. 2, § 6, Okl. Const., provide:
    *"The courts of justice of the State shall be open to every person,* and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; *and right and justice shall be administered without sale, denial, delay, or prejudice."* (Emphasis added.)
    The terms of Art. 2, § 7, Okl. Const., are:
    "No person shall be deprived of life, liberty, or property, without due process of law."
    For exposition of the Art. 2 § 6 access-to-court right, see *Brown v. Burkett,* Okl., 750 P.2d 481, 482 (1988); *Tulsa Tribune Co. v. Okl. Horse Racing Com'n,* Okl., 735 P.2d 548, 554–555 (1987); *Moses v. Hoebel,* Okl., 646 P.2d 601, 604 (1982); *Elam v. Workers' Compensation Court of State,* Okl., 659 P.2d 938, 941–942 (1983) (Opala, J., dissenting); *Carter v. Carter,* Okl., 783 P.2d 969 (1989).

5.  The pertinent terms of Art. 2, § 19, Okl. Const., are:
    "The right of trial by jury shall be and remain inviolate...."

6.  The terms of Art. 5 § 46, Okl. Const., provide in pertinent part:
    "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
    \* \* \* \* \* \*
    Regulating the affairs of counties, cities, towns, wards, or school districts;
    \* \* \* \* \* \*
    Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals....
    \* \* \* \* \* \*
    For limitation of civil or criminal actions;
    \* \* \* \* \* \*
    Providing for change of venue in civil and criminal cases."
    By mandating uniformity of procedure this section *implies* that all citizens of the state shall have equal access to legal process according to the ordinary course of the law.

7.  See *supra* note 6.

8.  The terms of Art. 6 § 21, Okl. Const., provide:
    "The Legislature shall create a Board of Arbitration and Conciliation in the Department of Labor and the Commissioner of Labor shall be ex-officio chairman."
    *This provision is not inconsistent with § 8 interdiction of executory (or promissory) waivers of constitutional benefits. It simply affords arbitration as a method of dispute resolution for those who may desire it.*

9.  The terms of Art. 9 § 42, Okl. Const., provide:
    "Every license issued or charter granted to a mining or public service corporation, foreign or domestic, shall contain a stipulation that such corporation will submit any difference it may have with employees in reference to la-

Art. 23 § 8's invalidation of *promises* to surrender one's fundamental-law benefits. Section 8 strikes *not at arbitration as a lawful or desirable method of dispute resolution, but solely at enforceability of private executory (or promissory) commitments* to forgo the constitutionally conferred benefit of forensic process for contract-generated disputes.[10]

The terms of Art. 23 § 8 clearly do not target the validity of all acts by which forensic access is renounced nor all forms of arbitration; their sweep is confined to *promise-based surrender* of a constitutional benefit that *may arise* in the course of a party's contractual dealings. Nothing in

§ 8 precludes a waiver *in praesenti*[11] or one that is effected by conduct[12] (waiver *in pais*)[13] or by declaration.[14] In short, Art. 23 § 8 nullifies *executory (or promissory) waivers*—promises *to surrender any benefit conferred by our constitution.*[15]

To summarize my view, § 8 makes legally unenforceable promises to relinquish the benefit of conducting *litigation in ordinary courts* for resolution of differences that may arise in the course of the parties' contractual dealings.[16] Constitutional benefits may be waived *in praesenti,* by conduct or by intraforensic declaration, without offending the § 8 ambit of interdiction.

bor, to arbitration, as shall be provided by law."
*This provision does not bar either the corporation or the affected employee from resort to courts for vindication of their rights.*

**10.** A contractual provision by which the parties *promise* to surrender a right that may arise in the future has been called an *executory waiver.* See *American Locomotive Co. v. Gyro Process Co.,* 185 F.2d 316, 320 (6th Cir.1950). *Promissory waiver* and *executory waiver* are synonymous terms and are used interchangeably.

**11.** A waiver, when not effected by an enforceable contract, is like a gift in that it can only operate *in praesenti* (at the present time), when the right is available and known to exist. *In re Irwin's Estate,* 136 P.2d 940, 942 (1943); *Roberts v. Griffith,* 207 S.W.2d 443, 446 (Tex.App.1948); *G.S. Johnson Co. v. Nevada Packard Mines Co.,* 272 F. 291, 305 (D.Nev.1920). Waiver by conduct is an excuse for nonperformance by the other party of a condition upon which liability depends and effectuates a change in the contractual relationship. *Curran v. Connecticut Indemnity Co.,* 20 A.2d 87, 90 (Conn.1941). See also generally Segrest, *Waiver and Estoppel,* 20 Baylor L.Rev. 325, 332–333 (1968).

**12.** See, e.g., *American Locomotive Co. v. Gyro Process Co., supra* note 9 at 320, where the *defendant's litigation conduct* in a breach-of-contract action—actively participating in the suit and opting for a jury trial—amounted to a *waiver of its contractual right to submit the dispute to arbitration;* *Lewis v. Steward,* 204 Okl. 349, 230 P.2d 455, 458 (1951), where plaintiffs waived strict compliance with a mining lease by making no substantial effort to collect any advance royalties or payment for coal used in the mine's operation, but instead accepted payments made on carload lots alone; *Kyle v. Massey,* 177 Okl. 26, 57 P.2d 595, 596 (1936), where landlord

could have waived the statutory requirement of his written assent to an assignment of the lease by accepting rent from the assignee.

**13.** Waiver *in pais* requires an affirmative, intentional act; "a passive, negative state of mind" is insufficient to effect a waiver by conduct. *Hurley v. Farnsworth,* 107 Me. 306, 78 A. 291, 292 (1910).

**14.** See, e.g., *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), where a felony defendant waived his right to counsel by declaring to the trial judge that he wanted to represent himself.

**15.** See, e.g., *Pine Belt Lumber Co. v. Riggs,* 80 Okl. 28, 193 P. 990 (1920) (the court's syllabus ¶ 3), where an employment contract's provision, which absolved the employer of any *future* liability for injuries to the employee caused by the former's negligence, was held void as violative of Art. 23 § 8, Okl. Const.

**16.** Oklahoma's common law in force before its abrogation by the Uniform Arbitration Act, 15 O.S.1981 §§ 801 et seq. which became effective Oct. 1, 1978, appears to treat as unenforceable a *promise* to arbitrate a *future* controversy. See *Boughton v. Farmers Insurance Exchange,* Okl., 354 P.2d 1085, 1089 (1960). Although, according to Lord Campbell's famous speech in *Scott v. Avery,* 5 H.L. 11, 25 L.J. [N.S.Exch.] 308, this adopted norm of the English common law may be of doubtful historicity, its disputed authenticity is irrelevant to the constitutional problem at hand. For a detailed discussion of the rule's allegedly illegitimate pedigree, see *Park Construction Co. v. Independent School Dist.,* 296 N.W. 475 (Minn.1941); Annot.: Validity of agreements to submit all future questions to arbitration, 135 A.L.R. 79.

KAUGER, Justice, with whom DOOLIN, Justice, and SUMMERS, Justice, join dissenting.

## I.

## INTRODUCTION

In approximately the year 972 B.C., King Solomon served as an arbitrator. In 1798, George Washington provided in his will for arbitration of any disputes over the distribution of his estate.[1] In 1856, *Scott v. Avery*, All E.R. 1, 7, was decided and the House of Lords Court ruled that under common law principles it would enforce agreements to arbitrate future disputes.[2] In 1907, the delegates for the Constitutional Convention provided in the Oklahoma Constitution for arbitration not once but three times in separate articles, art. 5, § 46, art. 6, § 21, and art. 9, § 42.[3]

As recently as May 22, 1990, this Court blithely affirmed grievance arbitration. The *City of Yukon v. International Ass'n*, 792 P.2d 1176 (Okla.1990), encompasses the law as we viewed it in *Voss v. City of Oklahoma City*, 618 P.2d 925 (Okla.1980), and in all our previous cases. *Long v. DeGeer*, 753 P.2d 1327 (Okla.1987); *Taylor v. Johnson*, 706 P.2d 896 (Okla.1985); *Garner v. City of Tulsa*, 651 P.2d 1325 (Okla. 1982); *City of Midwest City v. Harris*, 561 P.2d 1357 (Okla.1977). With this abrupt departure from our earlier precedents the Court undermines not only its settled jurisprudence, but also the expectations of thou-

---

1. F. Elkouri and E. Elkouri, *How Arbitration Works*, p. 2 (1985).

2. In 1960, the Supreme Court of Nevada in *United Ass'n v. Stine*, 76 Nev. 189, 351 P.2d 965, 974–75 (1960), adopted the reasoning of the Minnesota Supreme Court in *Park Constr. Co. v. Independent School Dist. No. 32*, 209 Minn. 182, 296 N.W. 475–76, 135 A.L.R. 59 (1941). The Minnesota Supreme Court decided the question of the validity of a contract providing for arbitration of future disputes under the applicability of the common law rule. It dealt first with the contention that such executory agreements were void as against public policy. The court discussed the purported historical basis for such holdings, and it relied on *Scott v. Avery*, All E.R. 1, 6–7 (1856), for its rationale in overruling its prior contrary decisions. Lord Campbell writing for the House of Lords Court said:

   "I wish to speak with great respect of my predecessors the judges; but I must just let your Lordships into the secret of that tendency. There is no disguising the fact that as formerly the emoluments of the judges depended mainly or almost entirely upon fees and they had no fixed salary, there was great competition to get as much as possible of litigation into Westminster Hall, and a great scramble in Westminster Hall for the division of the spoil, ... They had great jealousy of arbitrations, whereby Westminster Hall was robbed of those cases which came neither into the Queen's Bench, nor the Comon Pleas, nor the Exchequer. Therefore, they said that the courts ought not to be ousted of their jurisdiction, and that it was contrary to the policy of law."

   "I can see not the slightest ill consequence that can flow from such a liberty, and I see great advantage that may arise from it. Public policy, therefore, seems to me to require that effect should be given to the contract."

   The *Park* Court explained further that: (1) there never was a factual basis for the holding that executory agreements ousted the jurisdiction of the courts; (2) arbitration removed a controversy from the arena of litigation; (3) arbitration was no more an ouster than a covenant not to sue or an agreement of compromise and settlement; (4) arbitration simply disposed of issues without litigation; (5) jury trials may be waived even in criminal matters; (6) the parties agree in an arbitration agreement on the decision of a tribunal of their own choice and creation; and (7) the parties have a legal right to create their own tribunal.

3. Okla. Const. art. 5, § 46 provides in pertinent part:

   "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: ...
   Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate; ..."
   Okla. Const. art. 6, § 21 provides:
   "The Legislature shall create a Board of Arbitration and Conciliation in the Department of Labor and the Commissioner of Labor shall be ex-officio chairman."
   Okla. Const. art. 9, § 42 provides:
   "Every license issued or charter granted to a mining or public service corporation, foreign or domestic, shall contain a stipulation that such corporation will submit any difference it may have with employees in reference to labor, to arbitration, as shall be provided by law."

sands of public employees that our past decisions mean what they say.

In *Mindemann v. Independent School Dist. No. 6*, 771 P.2d 996 (Okla.1989), in which I concurred in result, we held that where the Legislature has provided a detailed and comprehensive statutory scheme for the dismissal of non-tenured teachers, a local school district is preempted from negotiating a more expansive set of employment rights to those teachers via grievance arbitration. Today, the majority utilizes *Mindemann* as a springboard to conclude that a local school district may—indeed must—repudiate a contractual agreement with its employees to submit disputes about the meaning and application of terms of a collective bargaining agreement to a neutral arbitrator. The Court reaches this result for two identified policy reasons. First, a school district cannot "bargain away" its "managerial prerogative;" and second, it may not negotiate a term in a collective bargaining agreement (CBA) which involves the delegation of a statutory duty or surrender of discretion vested in the board by statute. For the reasons enumerated below, I must respectfully dissent.

The majority misunderstands and misapplies our limited holding in *Mindemann* to impose its own policy views on public employee collective bargaining contrary to those expressed by the Legislature; it unnecessarily confuses grievance and impasse/interest arbitration, applying objections appropriate only to the latter to the former; it ignores the overwhelming weight of judicial authority holding that statutory authorization is *not* a prerequisite to a voluntary agreement by a school board to be bound by grievance arbitration; it fails to consider the implications of its ruling for statutorily mandated grievance arbitration for municipalities under the Fire and Police Arbitration Act, 11 O.S. 1981 §§ 51-101 et seq, as amended; it does not address serious constitutional issues

raised by the parties; and it does not come to grips with the public policy implications of displacing the contract dispute resolution mechanism agreed to by the parties in favor of civil litigation. The Court has embarked on a zig-zag course, the final destination—unknown. What is certain is that in the course of its journey, the Court stitches a "crazy quilt" [4] while simultaneously threatening to unravel the orderly pattern created by the Legislature and refined by hundreds of mature collective bargaining agreements in Oklahoma, of which grievance arbitration is an indispensable element.

## II.

## FACTS

The Ketchum school teachers chose the The Professional Educators Association of Ketchum (PEAK) as their exclusive collective bargaining representative. Marilyn Dixon, the chief negotiator for PEAK for the 1985–86 school year was employed by the Ketchum School District. She discussed the collective bargaining negotiations between PEAK and the School District with a member of the local press. After her statements were printed, Dixon received a reprimand from the superintendent. Because Dixon believed that the reprimand was undeserved and inappropriate, she filed a grievance under the grievance procedure set forth in the collective bargaining agreement alleging that the reprimand was violative of her rights under the CBA, as well as federal and state law. Dixon complied with the four steps of the prescribed grievance procedure: 1) She attempted to resolve the grievance with a school administrator; 2) She attempted to resolve the grievance with the superintendent; 3) She attempted to resolve the grievance with the board of education; 4) Dissatisfied with the results obtained at the first three levels, she requested that her grievance be set for arbitration. Although

4. Crazy patchwork, a passion among Victorian-era quilters from 1880 to the turn of the century, consists of a random arrangement of odd-shaped fabric scraps stitched to a muslin base and embellished with profuse embroidery of varicolored threads. *American Patchwork and Quilting* 296 (Better Homes and Gardens 1985); Ciba, Vaughan, *Romantic Patchwork and Quilting* 32 (1989).

the School District agreed to submit to advisory arbitration, and even though the CBA provided that the arbitrator was "limited to the issues submitted," and that "the arbitrator could not modify, add to, or subtract anything from the agreement of the parties," it refused to agree to the binding arbitration provided by the negotiated agreement. Dixon rejected the Board's offer to participate in advisory arbitration, and initiated an action in the trial court seeking a writ of mandamus directing the School District to submit to binding arbitration. In her application for the writ, Dixon alleged that of her rights under the CBA had been violated. However, she did not allege a violation of her first and fourteenth amendment rights under the United States Constitution based on the exercise of free speech.[5] The trial court issued the writ of mandamus, and the School District appealed.

### III.

GRIEVANCE ARBITRATION OF THE TEACHER'S CLAIM IS CONSISTENT WITH THE STATUTORY REQUIREMENT THAT TEACHER EVALUATION AND ADMONISHMENT BE SUBJECT TO COLLECTIVE BARGAINING.

The Oklahoma School Code[6] requires written employment contracts between school boards and school teachers. Pursuant to 70 O.S.1981 § 6–101(D), after a

teaching contract is consummated, it becomes binding on the school district and the school teacher alike.[7] The Legislature has enacted statutes authorizing collective bargaining, a process whereby the terms of all teacher contracts are negotiated at the same time, rather than individually.[8] Although individual teachers are not direct "parties" to the resulting collective agreement, they enjoy the rights created thereby. Even though the authorities have some difficulty in describing this arrangement in traditional contract terminology, collective bargaining has been a prominent feature of the American work place for over half a century. It is perhaps best conceptualized in the language used by the United States Supreme Court in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–79, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, 1415 (1960), in which the Court recognized a collective bargaining agreement as more than a contract:

> "The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant."

According to 70 O.S.Supp.1986 § 509.6 the board of education and the teachers representatives must negotiate in good faith concerning wages, hours, fringe benefits, and other terms and conditions of employment. Although school boards are un-

---

**5.** In *Mount Healthy City School Dist. Bd. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471, 481 (1977), the United States Supreme Court held:

> "Doyle's claims under the First and Fourteenth Amendments are not defeated by the fact that he did not have tenure. Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, (citation omitted), he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms."

**6.** Title 70 O.S.1981 § 6–101(A) provides in pertinent part:

> "Except as provided in subsection E of this section, no person shall be permitted to teach

in any school district of the state without a written contract ...."

**7.** Title 70 O.S.1981 § 6–101(D) provides in pertinent part:

> "D. Whenever any person shall enter into a contract with any school district in Oklahoma to teach in such school district the contract shall be binding on the teacher and on the board of education until the teacher legally has been discharged from his teaching position or released by the board of education from his contract...."

**8.** Title 70 O.S.Supp.1986 § 509.6 provides in pertinent part:

> "... The board of education and the representatives of the organization must negotiate in good faith on wages, hours, fringe benefits and other terms and conditions of employment...."

der an affirmative statutory duty to bargain in good faith,[9] good faith bargaining does not require the school district to agree to binding grievance arbitration. Against this statutory backdrop, the dispositive issue presented is whether either party, after voluntarily agreeing to mandatory grievance arbitration as a part of the collective bargaining agreement, may repudiate its contract after its prior agreement becomes either inconvenient or burdensome.

The majority must ignore important statutes to premise its decision on 70 O.S.1981 §§ 6–103 to 6–103.4. The majority concludes that because the power to admonish, suspend, dismiss or fail to reemploy a teacher is vested in the school board, the arbitration of grievances relating in any way to those subjects is always an improper delegation of authority. The majority's analysis founders because it fails to construe § 6–102.2 in conjunction with § 6–103.2. Section 6–102.2 requires the board of education, following consultation with the representative selected by the local teachers, to determine the guidelines for evaluation of teachers. This statutory provision specifically provides that the procedure for evaluating members of the negotiations unit shall be a negotiable item in school districts in which there exists a collective bargaining agreement made in accordance with statutory provisions.[10] Section § 6–103.2 requires that the evaluation guidelines of § 6–102.2 be followed before a principal may admonish a teacher.[11]

If a professional negotiations agreement is in place, the applicable statutes dictate that teacher reprimands are controlled by the agreement. The majority's decision modifies dramatically the Legislative command that teacher evaluation procedures, including the admonishment of a teacher, be controlled by existing agreements, by abrogating the grievance arbitration provisions of the agreements the Legislature meant to "grandfather". It further ignores the fact that the perceived "preemption" created by §§ 6–103 to 6–103.4 is negated by the Legislative directive to make those same procedures subject to collective bargaining.

The majority compounds its faulty analysis by misreading the prior decision which it claims "controls" the outcome of this case. Here, arbitration of the grievance does not entail a determination of whether the school board's action violated a state statute as in *Mindemann v. Independent School Dist. No. 6*, 771 P.2d 996 (Okla. 1989). There, the collective bargaining agreement provided for binding arbitration which superseded, rather than followed, the statute. In *Mindemann*, the alleged grievances were predicated on the nonrenewal of a teacher's contract and the nonrenewal of a tenured teacher's coaching assignment. Title 70 O.S.1981 § 6–103.4(E) specifically provides that the school board decisions on questions of nonreemployment are final and nonappealable, absent a violation of procedural due process. The Court found that this statute placed a nondelegable duty on the Board. Thus, that which is prohibited in *Mindemann* is clearly anticipated, permitted, and encouraged by the Legislative mandate that evaluation and

9. *Maule v. Independent School Dist. No. 9*, 714 P.2d 198, 204 (Okla.1985).

10. Title 70 O.S.Supp.1987 § 6–102.2 provides in pertinent part:
   "Each board of education shall maintain and annually review, following consultation or involvement by representatives selected by local teachers, a written policy of evaluation for all teachers, including administrators, in accordance with this act. In those school districts in which there exists a professional negotiations agreement made in accordance with Sections 509.1 et seq. of this title, the procedure for evaluating members of the negotiations unit shall be a negotiable item. Nothing in this act shall be construed to annul, modify or to preclude the renewal or continuing of any existing agreement heretofore entered into between any school district and any organizational representative of its employees...."

11. Title 70 O.S.1981 § 6–103.2 provides in pertinent part:
   "Whenever a principal who has the administrative responsibility under the supervision of the superintendent of a school district to plan, manage, operate and evaluate the educational program of a particular school attendance area and who has carried out the provisions of Section 2 of this act * believes that it is necessary to admonish a teacher in the district ..."
   * Section 6–102.2 of this title.

admonition (i.e., reprimand) procedures be negotiated with teachers.

The majority has also erred in concluding that the school district's agreement to include grievance arbitration in the collective bargaining agreement unlawfully delegated powers conferred upon it by the Legislature. The majority's unlawful delegation analysis is bottomed on its refusal to recognize the distinction between interest and grievance arbitration.

## IV.

## GRIEVANCE AND IMPASSE/INTEREST ARBITRATION DEFINED AND DISTINGUISHED.

In order to understand the precise problem before us, grievance and impasse/interest arbitration must be defined and distinguished. An arbitrator is required to perform very different roles in the two situations. Grievance arbitration originates only after the parties have reached a complete agreement on the terms and conditions of employment. The arbitrator's function is to make factual findings pertaining to a specific claim that the contract has been violated, and to interpret and apply the relevant contractual provisions, reading the agreement as a whole and discerning the intent of the parties, without rewriting the agreement.[12] Grievance arbitration is a method of resolving differences, concerning the interpretation, application, or violation of an already existing contract. Grievance arbitration utilizes the expertise of the labor arbitrator in a judicial or quasi-judicial capacity to interpret the voluntary agreement of the parties as expressed in their contract. A grievance arbitrator cannot add terms to the contract, the arbitrator can only interpret what is contained within the four corners of the agreement.[13]

Grievance procedures are contained in most collective bargaining agreements. Generally, arbitration clauses are considered to be proper subjects of bargaining between public employers and their employees[14] as the preferred method for settling disputes.[15] Judicial review of grievance arbitration provisions in the public sector is governed by a two-tiered analysis. The first step is to determine whether the constitution, statutes, decisional law or public policy prevent a public employer from agreeing to refer a dispute to arbitration. The second step is to determine whether the grievance alleged is covered by the agreement.[16] The second part of the test is not at issue. All parties agree that if the arbitration clause is valid, the grievance falls within its ambit.

Impasse or interest arbitration, on the other hand, involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and, in effect, writes the parties' collective agreement.[17] Binding interest arbitration permits the arbitrator to substitute his/her judgment for that of a public

**12.** *City and County v. Denver Firefighters Local No. 858*, 663 P.2d 1032, 1037 (Colo.1983).

**13.** *International Bhd. v. Graham County Elec. Coop., Inc.*, 783 F.2d 897, 899 (9th Cir.1986); *Ottawa v. Jaklinski*, 423 Mich. 1, 377 N.W.2d 668, 673 (1985); *Moon v. Police Officers*, 508 Pa. 495, 498 A.2d 1305, 1308 (1985); *City and County v. Denver Firefighters Local No. 858*, see note 12, supra at 1038; *New Jersey State Policemen's Benevolent Ass'n v. Irvington*, 80 N.J. 271, 403 A.2d 473, 479 (1979).

**14.** Annot., "Bargainable or Negotiable Issues in State Public Employment Labor Relations," 84 A.L.R.3d 242, 295 (1978).

**15.** Annot., "Rights of State and Municipal Public Employees in Grievance Proceedings," 46 A.L.R.4th 912, 916 (1986).

**16.** *Board of Educ. v. Bremen Dist. No. 228 Joint Faculty Ass'n*, 101 Ill.2d 115, 77 Ill.Dec. 783, 461

N.E.2d 406, 409 (1984); *Iowa City Community School Dist. v. Iowa City Educ. Ass'n*, 343 N.W.2d 139, 141 (Iowa 1983); *City and County v. Denver Firefighters Local No. 858*, see note 12, supra.; *Board of Educ. v. Yonkers Fed'n*, 40 N.Y.2d 268, 386 N.Y.S.2d 657, 353 N.E.2d 569–70 (1976); *Local Div. No. 812 v. Central W. Va. Transit Auth.*, 365 S.E.2d 76, 80 (W.Va.1987); *Evansville–Vanderburgh School Corp. v. Evansville Teachers Ass'n*, 494 N.E.2d 321, 325 (Ind. App.1986); *Whitewater Educ. Ass'n v. Whitewater Unified School Dist.*, 113 Wis.2d 151, 335 N.W.2d 408, 411 (1983); *Oneida v. Oneida City Unit*, 78 A.D.2d 727, 432 N.Y.S.2d 541, 543 (1980).

**17.** *N.L.R.B. v. Big Three Indus., Inc.*, 497 F.2d 43, 48 (5th Cir.1974); *Board of Educ. v. Hawaii Pub. Employment Relations Bd.*, 56 Haw. 85, 528 P.2d 809, 811 (1974); *Fort Meyers v. News–Press Pub. Co.*, 514 So.2d 408, 411 (Fla.App.1987).

official on matters the electorate has entrusted to its elected representatives. Interest arbitration is said to involve the delegation of legislative decision making to an unelected third party. The agency of government, a political subdivision, and its governing board have a responsibility to the public to faithfully discharge its duties under the statutes. Duties which are specifically imposed by statute upon public officials cannot be delegated to an arbitrator, because the public officials, and they alone, are charged with the control and management of their positions.[18] The Legislature's understanding of this distinction, and its public policy implications, is reflected in the statutes which make impasse/interest arbitration for public employees non-binding.[19]

## V.

### EXPRESS STATUTORY AUTHORITY IS NOT A PREREQUISITE TO A VOLUNTARY AGREEMENT BY A SCHOOL BOARD TO BE BOUND BY GRIEVANCE ARBITRATION.

This case involves a grievance arbitration clause found in an existing employment contract. The collective bargaining agreement provides for a multi-level grievance procedure culminating in arbitration. If the grievant is not satisfied with the disposition of the grievance at level three, a hearing before the Board of Education, a request may be made within ten days for the grievance to be referred to arbitration. If the teacher representative organization determines that the grievance is meritorious, it is submitted for arbitration. The agreement provides a method for choosing an arbitrator who is limited to considering the issues submitted and whose findings are binding on both parties.

Because neither the Oklahoma Constitution nor the Oklahoma statutes prohibit grievance arbitration clauses, we must determine if they are precluded by public policy or case law. There are two rationales involving binding grievance arbitration. The majority view is that an express statutory provision is not a prerequisite of binding grievance arbitration.[20] The minority view holds that such provisions are the equivalent of governmental policy making and, therefore, encroach on essentially

18. *Transit Auth. v. Amalgamated Transit Union*, 698 S.W.2d 520, 523 (Ky.1985).

19. See, 70 O.S.Supp.1986 § 509.7. See also, 11 O.S.1981 §§ 51–106, 51–108 providing for non-binding interest arbitration.

20. The following jurisdictions allow binding grievance arbitration in the absence of express statutory authority. *Lake Wash. School Dist. No. 414 v. Lake Wash. Educ. Ass'n.*, 109 Wash.2d 427, 745 P.2d 504, 508, (1987), *modified*, 757 P.2d 533 (1988) (allowed grievance arbitration in school teacher transfer issue); *Local Division No. 812 v. Central W. Va. Transit Auth.*, see note 16, supra (allowed grievance arbitration in discharge of a transit authority employee); *Paranko v. State*, 200 Conn. 51, 509 A.2d 508, 512 (1986) (allowed grievance arbitration in demotion of a state employee); *Board of Educ. v. Bremen Dist. No. 228 Joint Faculty Ass'n.*, see note 16, supra (allowed grievance arbitration in dismissal of school teachers); *Iowa City Community School Dist. v. Iowa City Educ. Ass'n.*, see note 16, supra (allowed grievance arbitration in denial of a salary increase to a school teacher); *City and County v. Denver Firefighters Local No. 858*, see note 12, supra (allowed grievance arbitration in discrimination issue involving a firefighter); *Cape Elizabeth School Bd. v. Cape Elizabeth Teachers Ass'n.*, 459 A.2d 166, 175 (Me.1983) (allowed grievance arbitration in dismissal of a school teacher); *Grand Rapids v. Grand Rapids Lodge No. 97 Fraternal Order*, 415 Mich. 628, 330 N.W.2d 52, 54 (1982) (allowed grievance arbitration in a police officer's indemnification issue); *Civil Serv. Employees Ass'n., Inc. v. Harrison*, 48 N.Y.2d 66, 421 N.Y.S.2d 839, 397 N.E.2d 350, 354 (1979) (allowed grievance arbitration in termination of a city employee); *Woodstock Union High School Bd. v. Woodstock Union High School Teachers' Org.*, 136 Vt. 256, 388 A.2d 392, 394 (1978) (allowed grievance arbitration in salary issue involving a nondegree school teacher); *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977) (allowed grievance arbitration in termination of a state employee); *West Fargo Pub. School Dist. No. 6 v. West Fargo Educ. Ass'n.*, 259 N.W.2d 612, 616 (N.D.1977) (allowed grievance arbitration involving a school teachers' paid sick leave); *Board of Educ. v. Pennsylvania Fed'n.*, 464 Pa. 92, 346 A.2d 35, 38 (1975) (allowed grievance arbitration in termination of a school teacher); *Dayton Classroom Teachers Ass'n. v. Dayton Bd.*, 41 Ohio St.2d 127, 70 O.O.2d 223, 323 N.E.2d 714, 718 (1975) (allowed grievance arbitration involving school teacher's working conditions); *Richards v. Board of Educ.*, 58 Wis.2d 444, 206 N.W.2d 597, 606 (1973) (allowed grievance arbitration involving renewal of a school teachers' contract); *Evansville–Vanderburg School Corp. v. Evansville Teachers Ass'n.*, see note 16, supra

managerial decisions.[21] Here, the majority opinion does not invoke any provision of the Oklahoma Constitution in support of its assertion that grievance arbitration clauses delegate unlawfully "inherent managerial preogatives", nor can it do so. Instead, the majority apparently relies, without so stating, on the lack of express statutory recognition for grievance arbitration in school employee bargaining as the legal underpinning for its decision. The majority's failure to acknowledge its true rationale is understandable given the overwhelming weight of modern authority.

## A

### THE MAJORITY VIEW

Although a binding grievance arbitration provision must be upheld if the state statutory scheme either permits or mandates its inclusion in the collective bargaining agreement,[22] statutory authority is not a prerequisite to enforcement. In this case, there is a state statute, 70 O.S.Supp.1987 6–102.2, which expressly makes a teacher reprimand subject to the terms of an existing collective bargaining agreement. [The collective bargaining agreement in this case

includes grievance arbitration.] Legislative and judicial favor for grievance arbitration has progressively increased in the public sector. Many states legislatively provide for the establishment of grievance arbitration procedures in public-sector employment. Generally, grievance arbitration is considered to be a proper subject of collective bargaining even in the absence of direct statutory authorization.[23]

Unhesitatingly, courts have enforced grievance arbitration where no legislative enactment exists governing the clauses.[24] Even where statutory enactments exist governing binding grievance arbitration, some jurisdictions have allowed contractual provisions to preempt the statute [25] presumably on the ground that the statute provides a floor not a ceiling of rights—much as we acknowledged in *Jackson v. Independent School Dist. No. 16*, 648 P.2d 26, 30 (Okla.1982) and *Oliver v. City of Tulsa*, 654 P.2d 607, 609 (Okla.1982), or they enforce the contract based on common law principles.[26] The lack of a statutory provision providing for binding grievance arbitration does not preclude district and employee representatives from negotiating

(allowed grievance arbitration involving teachers' class assignment); *Worcester v. Borghesi,* 19 Mass.App. 661, 477 N.E.2d 155, 158 (1985) (allowed grievance arbitration involving police officer's incapacity); *Howard County Bd. v. Howard County Educ. Ass'n., Inc.,* 61 Md.App. 631, 487 A.2d 1220, 1224 (1985) (allowed grievance arbitration involving classroom observation of school teachers); *Pompano Beach v. Meiroff,* 410 So.2d 663–64 (Fla.App.1982) (allowed grievance arbitration involving police officer's wage dispute).

21. Only four jurisdictions foreclose binding grievance arbitration in the absence of express statutory authority. However, they are readily distinguished. *Covington v. Covington Lodge No. 1,* 622 S.W.2d 221, 223 (1981) (grievance arbitration not upheld to enforce a provision that pertained to future agreements); *Ridgefield Park Educ. Ass'n. v. Ridgefield Park Bd.,* 78 N.J. 144, 393 A.2d 278, 289 (1978) (grievance arbitration not upheld because the transfer of teachers is a matter of governmental policy, however, grievance arbitration is allowed for mandatorily negotiable terms under the state's statutes); *School Bd. v. Parham,* 218 Va. 950, 243 S.E.2d 468, 472 (1978) (grievance arbitration not upheld because the state constitution required the School Board to have the power of local supervision); *Sullivan v. Belmont,* 7 Mass.App. 214,

386 N.E.2d 1288, 1291–92 (1979) (grievance arbitration not upheld because a statute pre-empted determinations of disability).

22. *Cape Elizabeth School Bd. v. Cape Elizabeth Teachers Ass'n.,* see note 20, supra; *Local 1226 v. Rhinelander,* 35 Wis.2d 209, 151 N.W.2d 30, 36 (1967); *West Fargo Pub. School Dist. No. 6 v. West Fargo Educ. Ass'n.,* see note 20, supra; *Howard County Bd. v. Howard County Educ. Ass'n.,* see note 20, supra.

23. F. Elkouri and E. Elkouri, *How Arbitration Works,* Ch. 2, p. 17–8 (BNA, 4th Ed.Supp.1988). See note 1, supra.

24. *Grand Rapids v. Grand Rapids Lodge No. 97 Fraternal Order,* see note 20, supra; *Woodstock Union High School Bd. v. Woodstock Union High School Teachers' Org.,* see note 20, supra; *Dayton Classroom Teachers Ass'n. v. Dayton Bd.,* see note 20, supra.

25. *Cape Elizabeth School Bd. v. Cape Elizabeth Teachers Ass'n.,* see note 20, supra; *Howard County Bd. v. Howard County Educ. Ass'n.,* see note 20, supra.

26. *Local 1226 v. Rhinelander,* see note 22, supra.

contracts containing provisions for binding grievance arbitration.[27]   In negotiating any teaching contract, school boards may exercise express, implied, and necessarily incidental powers to affect the essential objects and purposes of the school district.[28]

## B

## THE MINORITY VIEW

Cases which have espoused the minority view include the findings that: (1) submission of the grievance to arbitration results in the arbitrator determining whether an action violates a legislative decree;[29] (2) the negotiated dismissal provision conflicts with a legislatively enacted procedure for teacher firings;[30] and (3) binding arbitration divests local school boards of their authority over application of local policies, rules and regulations.[31]

It is significant that in several cases finding grievance arbitration provisions to constitute an unlawful delegation of authority, there was no statutory authority for collective bargaining.[32]   [In *School Bd. v. Parham*, 218 Va. 950, 243 S.E.2d 468, 472 (1978), the Virginia Supreme Court found that there was neither statutory nor constitutional authority for collective bargaining agreements.   However, in *Dayton Classroom Teachers Ass'n v. Dayton Bd.*, 41 Ohio St.2d 127, 70 O.O.2d 223, 323 N.E.2d 714, 718 (1975), the Ohio Supreme Court found that even though there was no statutory authority for collective bargaining agreements, the board of education had broad discretionary powers in its dual role

of manager of schools and employer of teachers which included grievance arbitration.]

## VI.

## A  VOLUNTARY  CONTRACTUAL AGREEMENT  FOR  BINDING GRIEVANCE ARBITRATION DOES NOT VIOLATE THE OKLA. CONST. ART. 10, § 26.

The school district's argument that grievance arbitration clauses in collective bargaining agreements violate the Okla. Const. art. 10, § 26 is misplaced.   Were impasse arbitration involved, the district's position would directly implicate the debt limitation structures of art. 10, § 26.   This argument merits discussion because it illustrates the crucial differences between grievance and impasse arbitration.   However, this discussion is not meant to signal a position on the constitutional viability of impasse arbitration, an issue which has not been placed before the Court.   Interest/impasse arbitration clauses are said to violate the debt limitation provisions of the Okla. Const. art. 10, § 26 which prohibits any political subdivision from becoming indebted in an amount exceeding the income and revenue of that fiscal year, without the assent of three-fifths of its voters.[33] Nevertheless, certain claims are excepted from the constitutional prohibition.   These include items based on constitutional governmental functions or liabilities which are imposed upon a municipality by the sovereign power as expressed in the Oklahoma

27.  *Covington v. Covington Lodge No. 1*, see note 21, supra.

28.  *Board of Educ. v. Cloudman*, 185 Okla. 400, 92 P.2d 837, 841 (1939).

29.  *City and County v. Denver Firefighters Local No. 858*, see note 12, supra.

30.  *Cape Elizabeth School Bd. v. Cape Elizabeth Teachers Ass'n.*, see note 20, supra.

31.  *School Bd. v. Parham*, see note 21, supra.

32.  *School Bd. v. Parham*, see note 21, supra.

33.  The Okla. Const. art. 10, § 26 provides in pertinent part:

"Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof. . . . and provided further that nothing in this section shall prevent any school district from contracting with certificated personnel for periods extending one (1) year beyond the current fiscal year, under such conditions and limitations as shall be prescribed by law."

Constitution and the valid acts of the Legislature.[34] Article 10, § 26 also permits school districts to contract with teachers for two years.

The Legislature has regulated the public school system. Our statutes provide for the establishment of salaries;[35] the licensure and certification of school teachers;[36] evaluation of teachers;[37] the dismissal or nonreemployment of teachers;[38] the right to bargain collectively;[39] and a teachers' retirement system.[40] From a perusal of these various Legislative enactments, it is clear that the Legislature intended to provide a complete, uniform, and comprehensive system of collective bargaining agreements with school teachers for the benefit of the entire state and its pupils. When the Legislature imposes upon school district by statute, provisions determining procedures for the establishment of salaries, the requirements for hiring and tenure, and a pension plan, the decisions involved in that employment are governmental functions and are, therefore, within the exception to the prohibitions stated in art. 10, § 26. Officials who are engaged in governmental decision-making—setting budgets, salaries, and other terms and conditions of public employment are accountable to the

**34.** *Hillcrest Medical Center v. State,* 675 P.2d 432, 435 (Okla.1983); *Board of County Comm'rs. v. Oklahoma Pub. Employees Retirement Sys.,* 405 P.2d 68, 72 (Okla.1965); *Board of County Comm'rs. v. Mullins,* 202 Okla. 628, 217 P.2d 835, 842 (1950).

**35.** Title 70 O.S.Supp.1986 § 18–114 provides in pertinent part:

"Teachers in the public schools of Oklahoma shall receive in salary and/or fringe benefits not less than the amounts specified in the following schedule: ..."

**36.** Title 70 O.S.Supp.1982 § 6–154 provides in pertinent part:

"A. After January 31, 1982, the board of education of each school district shall employ and contract in writing, as required in Section 6–101 of this title, only with persons certified to teach by the Board or with entry-year teachers, in accordance with this act, except as otherwise provided by law...."

**37.** Title 70 O.S.Supp.1987 § 6–102.2 provides in pertinent part:

"Each board of education shall maintain and annually review, following consultation or involvement by representatives selected by local teachers, a written policy of evaluation for all teachers, including administrators, in accordance with this act. In those school districts in which there exists a professional negotiations agreement made in accordance with Sections 509.1 et seq. of this title, the procedure for evaluating members of the negotiations unit shall be a negotiable item. Nothing in this act shall be construed to annul, modify or to preclude the renewal or continuing of any existing agreement heretofore entered into between any school district and any organizational representative of its employees...."

**38.** The procedure for dismissal or nonreemployment, 70 O.S.1981 § 6–103.4, provides in pertinent part:

"A. Whenever a superintendent of a school district determines that cause exists for the dismissal or nonreemployment of a teacher employed within the school district, he or she shall submit a recommendation in writing to the board of education for such school district. In the case of a tenured teacher, the recommendation shall contain the one or more statutory grounds for the potential dismissal or nonreemployment. The recommendation for the dismissal or nonreemployment of either a tenured or a probationary teacher shall be approved or rejected upon a majority vote of the board's members...."

**39.** Collective bargaining rights are provided in 70 O.S.Supp.1986 § 509.2 which furnishes in part:

"A. The local board of education shall recognize an employee organization designated by an election of the employees in an appropriate bargaining unit as the exclusive representative of all the employees in such unit. The members of an employee organization shall be employees as defined in paragraphs 1, 2 and 3 of this subsection. The recognition of such employee organization shall be made by the local board no later than fourteen (14) days after said election. Any person who desires not to be represented by any organization may so state in writing to his board of education...."

**40.** Title 70 O.S.1981 § 17–102 provides:

"A retirement system is hereby established and placed under the management of the Board of Trustees for the purpose of providing retirement allowances and other benefits under the provisions of this act for teachers of the State of Oklahoma.
The Board of Trustees shall have the power and privileges of a corporation and shall be known as the 'Board of Trustees of the Teachers' Retirement System of Oklahoma', and by such name all of its business shall be transacted, all of its funds invested, and all of its cash and securities and other property held in trust for the purpose for which received."

citizens they represent. Binding impasse/interest arbitration, the argument goes, removes these decisions from the control of elected representatives, placing them in the hands of an outsider who has no accountability to the public. Formation of an agreement may not be delegated to a third party.

However, the submission of a labor dispute to arbitration is not an unconstitutional delegation of authority where the particular grievance arises under the terms of an existing contract. Here, the dispute concerns a provision in an existing collective bargaining agreement provision which requires submission of grievances under the terms of that agreement to binding arbitration.[41] The school board did not relinquish control by agreeing to a mandatory grievance arbitration provision. It exercised a power expressly granted, i.e., contracting with teachers, by the means of the collective bargaining agreement. The clause in question was a bargained-for part of the agreement. Because a contract has been executed containing a provision for binding grievance arbitration, the school district is bound by its agreement.

## VII.

### GRIEVANCE ARBITRATION DOES NOT VIOLATE THE OKLA. CONST. ART. 23, § 8.

The concurring opinion implies that the collective bargaining agreement offends the Okla. Const. art. 23, § 8. Were this so, *all arbitration in the state of Oklahoma would be unconstitutional!* Recently, we have addressed arbitration questions in *Mindemann v. Independent School Dist. No. 6,* 771 P.2d 996 (Okla.1989), *City of Yukon v. International Ass'n,* 792 P.2d 1176 (Okla.1990), *Dean Witter Reynolds Inc., v. Shear,* —— OBJ ——, 796 P.2d 296 (Okla.1990); and *City of Muskogee v. Haworth,* —— OBJ ——, 796 P.2d 337 (Okla. 1990). Although this court may address constitutional questions of public concern which have not been raised by the parties,[42] the court did not see fit to invalidate arbitration on a state-wide basis in any of these cases. This is so, even though the question of the effect of the Okla. Const. art. 23, § 8 on arbitration agreements was squarely presented in *Dean Witter.* Nevertheless, the majority opinion decided the cause on other issues, thus avoiding the underlying constitutional question. Now, however, it is doing indirectly what it has refused to do directly, vitiating untold numbers of collective bargaining agreements.

Any concern about the constitutionality of arbitration in Oklahoma is misplaced for the following reasons: 1) Statutory and common law arbitration exist co-extensively;[43] 2) The common law of England, as it existed at statehood, allowed arbitration, and it was incorporated into Oklahoma law;[44] Instead of forbidding arbitration,

---

**41.** The Collective Bargaining Agreement, Article V, Grievance Procedure provides in pertinent part:

"A. Purpose
The purpose of this procedure is to secure, at the lowest possible level, equitable solutions to the problems which may from time to time arise affecting employees.
B. 1. A grievance is a claim by an employee that there has been a violation, misinterpretation, inequitable or otherwise improper application of the terms of this agreement and Board Policy that directly affects teachers."

**42.** *Simons v. Brashears Transfer and Storage,* 344 P.2d 1107, 1113 (Okla.1959).

**43.** *House Grain Co. v. Obst,* 659 S.W.2d 903, 905 (Tex.App.1983).

**44.** Title 12 O.S.1981 § 2 provides:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."
Title 25 O.S.1981 § 29 provides:
"The rule of common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."
In *Scott v. Avery,* All E.R. 1, 7 (1856), the House of Lords Court ruled that under common law principles it would enforce agreements to arbitrate future disputes.

the drafters of the Oklahoma Constitution embraced it in three separate articles: art. 5, § 46; art. 6, § 21; and art. 9, § 42 [45] 3) "The common law is a dynamic and growing thing, and its rules arise from the application of reason to the changing condition of society"; [46] 4) A collective bargaining agreement forms a new common law—the law of the workplace, and the Okla. Const. art. 2, § 15 [47] forbids "any law impairing the obligation of contracts"; 5) Only if the terms of the contract are disputed does the right to trial by jury arise; [48] 6) Parties may choose to use the laws of another state which allow arbitration; [49] 7) If federal law is impacted, state law is pre-empted by the Federal Arbitration Act [50] and the Labor Management Relations Act; [51] 8) Failure to recognize arbitration may result in a denial of equal protection under the 14th amendment to the constitution of the United States, and under the Okla. Const. art. 5, § 46, which forbids the enactment of special laws concerning the jurisdiction of arbitrators, or under art. 5, § 51 which prohibits the granting of ·exclusive rights and privileges to any association, corporation, or individual. If school teachers are precluded from participating in collective bargaining concerning grievance arbitration, so then, too, must the firefighters and police.; [52] and 9) Because grievance arbitration awards are reviewable by the courts, there is no denial of access to courts, which is prohibited under the Okla. Const. art. 2, § 6. [53]

In *Long v. DeGeer*, 753 P.2d 1327, 1330 (Okla.1987), the concurring opinion expressed concern that under art. 23, § 8, express or implied contractual waivers of the fundamental right to a jury trial appear to be unenforceable. Evidently, those are the same concerns expressed by the concurring opinion here. Obviously, for the reasons discussed above, bargained-for public sector grievance arbitration, which is not pre-empted by federal law, is not unconstitutional per se. The real questions presented are whether the parties agreed to an intentional relinquishment of a known right and whether they intended voluntarily to waive the right to trial by jury, such as is permitted by 12 O.S.1981 § 591. [54]

The framers of statutes and constitutional provisions must always be presumed to be familiar with settled rules of statutory and constitutional construction, and they may act on such rules and expect courts to follow them in construing such provisions, and courts should scrupulously apply such rules. *Wimberly v. Deacon,* 195 Okla. 561, 144 P.2d 447, 450 (1943).

**45.** See note 3, supra.

**46.** *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300, 303 (Okla.1986).

**47.** Okla. Const. art. 2, § 15 provides:

"No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties."

**48.** *Boyden v. Lamb,* 152 Mass. 416, 25 N.E. 609, 611 (1890).

**49.** *Dean Witter Reynolds, Inc. v. Shear,* —— OBJ ——, 796 P.2d 296 (Okla.1990).

**50.** See 9 U.S.C. §§ 1–14 (1982). *Securities Indus. Ass'n v. Connolly,* 883 F.2d 1114, 1119 (1st Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 2559, 109 L.Ed.2d 742, (May 29, 1990); *Dean*

*Witter Reynolds, Inc. v. Shear,* see note 49, (Kauger, J., concurring in result opinion), supra.

**51.** Title 29 U.S.C. § 173(d) (1978) provides:

"(d) Final adjustment by a method agreed upon by the parties is declared to be the desirable method of settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. The Service is directed to make its conciliation and mediation services available in the settlement of such grievance disputes only as a last resort and in exceptional cases."

**52.** See, *Maule v. Independent School Dist. No. 9,* 714 P.2d 198, 203–04 (Okla.1985). See also, 11 O.S.1981 §§ 51–101 to 51–113.

·**53.** *Heffner v. Jacobson,* 100 N.J. 550, 498 A.2d 766, 768 (1985). See also, "Arbitration and the Common Law", 10 Lawyers' Arbitration Letter 1, 4 (1986).

**54.** Title 12 O.S.1981 § 591 provides:

"The trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court in other actions, in the following manner: By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney,

Oklahoma's art. 23, § 8 is unique. Although no other state has an identical constitutional provision, California's art. I, § 16 is helpful. It provides that a jury trial may be waived in a civil action only in compliance with the statute.[55] California's Civil Procedure Code § 631, which is similar to Oklahoma's § 591, permits waivers. Under California law, the constitutional right to trial by jury may be waived by filing written consent with the judge or court clerk; by consenting in open court, and entering the consent into the record; or by failing either to request a jury trial, to appear at trial, or to pay advance jury costs.[56] Because the issue here is the right to a jury trial, the California analysis in a comparable situation is useful.

The California Supreme Court in *Madden v. Kaiser Found. Hosp.*, 17 Cal.3d 699, 131 Cal.Rptr. 882, 552 P.2d 1178, 1186–87 (1976), found that § 631 presupposes a pending action, and that the statute relates to the way a party can waive the right to demand a jury trial, rather than to a trial before a judicial fact-finder. Section 631 does not purport to prevent parties from avoiding jury trial because their controversy was not submitted to a court of law in the first instance. It has always been understood that parties could avoid a jury trial, either by settling the underlying controversy, or by agreeing to a method of resolving the cause which need not invoke a judicial forum. However, the *Madden* Court did not suggest that one could be deprived of the right to trial by jury if,

unknowingly, the person had executed a document which purported to exact a waiver.[57] Under those circumstances, the agreement is avoidable.

If we construe § 591 to mean that a jury trial in a contract case may only be waived by filed written consent, oral consent in court, or failure to appear at the trial, negotiated settlements could be obliterated based on the allegation of the denial of the art. 23, § 8 right to jury trial. This is an absurd result, and we may not presume that the Legislature intended to enact an absurdity.[58] A reasonable construction of § 591 is that it applies to pending actions. Parties may use other forms of resolving a controversy by the intentional waiver of the right to jury.

Article 23, § 8 was not intended nor should it be construed to preclude arbitration. It would have been much easier for the framers of the Oklahoma Constitution to have excluded arbitration once and for all, rather than to have included it three times. They refused to do so. We may not do so by judicial fiat. Just as § 591 has been construed to allow the parties to knowingly waive a jury trial without violating the Oklahoma Constitution, so should the bargained-for agreement to engage in grievance arbitration. This is not the case of an uninformed person signing a contract of adhesion without understanding the consequences. Here, each provision of the contract was negotiated between the parties. The bargaining unit, as well as the

filed with the clerk. By oral consent, in open court, entered on the journal."

**55.** Cal. Const. art. I, § 16 provides in pertinent part:
"Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict. A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute...."

**56.** Cal.Civ.Proc.Codes § 631 (West Supp.1989) provides in pertinent part:
"(a) Trial by jury may be waived by the several parties to an issue of fact in any of the following ways:
(1) By failing to appear at the trial.

(2) By written consent filed with the clerk or judge.
(3) By oral consent, in open court, entered in the minutes or docket.
(4) By failing to announce that a jury is required, at the time the cause is first set for trial, ...
(5) By failing to deposit with the clerk, or judge, advance jury fees ...."

**57.** See, *Lawrence v. Walzer & Gabrielson*, 207 Cal.App.3d 1501, 256 Cal.Rptr. 6, 10 (1989); *Ramirez v. Superior Court*, 103 Cal.App.3d 746, 163 Cal.Rptr. 223, 229 (1980).

**58.** *Johnson v. Johnson*, 674 P.2d 539, 542 (Okla. 1983).

school board, were aware that any difference would be resolved through arbitration, "the common law of the workplace", and not in a court of law. The School board should honor its contract, and this Court should not interfere by unconstitutionally impairing the terms of a solemn contract.

## VIII.

### ENFORCEMENT OF THE ARBITRATION PROVISION UNDER THE COLLECTIVE BARGAINING AGREEMENT DOES NOT VIOLATE PUBLIC POLICY.

The school district asserts that enforcement of the arbitration provision violates public policy by removing control of the school district from the school board. In *City and County v. Denver Firefighters Local No. 858*, 663 P.2d 1032, 1037 (Colo. 1983), the Colorado Supreme Court considered the differences where mandatory arbitration clauses are found in "interest" and "grievance" negotiations. The Court recognized that the initial agreement as to employment terms could not be delegated to a disinterested third-party arbitrator because it involved the making of governmental policy decisions. However, once an agreement existed, those decisions had been made and the arbitrator was simply acting in a quasi-judicial capacity rather than as a policy maker.

The school district relies on *City of Covington v. Covington Lodge No. 1*, 622 S.W.2d 221–22 (Ky.1981), for the proposition that there are some discretionary duties which the school board cannot delegate. In *Covington*, the collective bargaining agreement contained a binding arbitration provision providing for binding arbitration concerning the terms of the new contract. The Kentucky court found that delegation of the right to make a new contract was an unlawful delegation of legislative power. In essence, the provision provided for "interest arbitration" under the guise of a "grievance arbitration" clause.

The clear line developed by case law distinguishing those cases where arbitration clauses have been upheld, and those where the clauses have been struck down, concerns whether the issue to be arbitrated falls within "interest" or "grievance" arbitration. *Covington* notwithstanding, the arbitration clause here provides for a mutually agreed procedure for resolution of an issue arising from a negotiated contract rather than from a provision providing for arbitration of issues to be included in a new contract over the school board's objection. The clause clearly encompasses the arbitration of a grievance arising under a negotiated contract and should be upheld.[59]

Jurisdictions considering alleged public policy violations under similar situations have failed to find public policy violations.[60] Public policy may not be invoked in every instance where a public employer seeks to escape the consequences of its previous agreement by claiming that the dispute over the meaning of a term in a collective bargaining agreement threatens to encroach upon its management prerogatives as a school board.[61]

The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been contractually provided. The basis for instituting an arbitration proceeding may be either an agreement which provides for arbitration of future controversies, or for submission of existing controversies. An

**59.** For a distinction between the matters properly arbitrable and the powers of the arbitrator, see, Annot., "Matters Arbitrable Under Arbitration Provisions of Collective Labor Contract," 24 A.L.R.2d 752, 754 (1952).

**60.** *Wyandanch Union Free School Dist. v. Wyandanch Teachers Ass'n*, 48 N.Y.2d 669, 421 N.Y.S.2d 873, 397 N.E.2d 384–85 (1979); *West Fargo Pub. School Dist. No. 6 v. West Fargo Educ. Ass'n*, see note 20, supra; *Howard County Bd. v.*

*Howard County Educ. Ass'n., Inc.*, see note 20, supra.

**61.** *Wyandanch Union Free School Dist. v. Wyandanch Teachers Ass'n*, see note 60, supra; *Mineola Union Free School Dist. v. Mineola Teachers Ass'n.*, 46 N.Y.2d 568, 415 N.Y.S.2d 797, 389 N.E.2d 111–12 (1979); *Port Jefferson Station Teachers Ass'n. v. Brookhaven–Comsewogue Union Free School Dist.*, 45 N.Y.2d 898, 411 N.Y.S.2d 1, 383 N.E.2d 553–54 (1978).

agreement for the submission of an issue to arbitration is a prerequisite to the commencement of a valid arbitration agreement. If the contractual terms include arbitration, it constitutes a substantive and mandatory right.[62] Generally, courts favor arbitration statutes and collective bargaining agreements because they provide substantial justice by utilizing an immediate, inexpensive solution with a minimum of court interference. Many of our prior decisions construing the rights and duties of public employees under the Fire and Police Arbitration Act have acknowledged the virtues of grievance arbitration.[63]

In an analgous situation, this Court held in *Mahan v. Agee*, 652 P.2d 765, 767 (Okla. 1982) and *Oklahoma Secondary School Activities Ass'n v. Midget*, 505 P.2d 175, 177 (Okla.1972), that we will not interfere with the internal affairs of the Oklahoma Secondary Schools Activities Association. This Association promulgates rules concerning the eligibility of students to compete in various interscholastic events. This is a voluntary association which schools join and as stated are bound by the decisions and rules of the organization. It is inconsistent for this Court to find that if a school district freely enters into a collective bargaining agreement which is authorized by statute, the school district will not be bound by the agreement when the school district can enter into an agreement without any statutory authority regarding eligibility of students to compete in sports and this Court will find that the school district is bound by the rules and decisions of the Association.

In *Burdick v. Independent School Dist. No. 52*, 702 P.2d 48, 53 (Okla.1985), we held that the doctrine of estoppel is applicable to a school district if the imposition of the theory would further a public policy or interest. The Legislature has expressed the public policy by its authorization of collective bargaining by enacting 70 O.S. Supp.1986 § 509.6. Section 509.6 requires the board of education and the teachers, representative to negotiate in good faith concerning wages, hours, fringe benefits and other terms and conditions of employment.[64] Pursuant to 70 O.S.1981 § 6–101(D), after a teaching contract is consumated, it becomes binding on the school district and the school teacher alike.[65] Under these two statutes alone, it is clear the Legislature intended to provide a complete, uniform and comprehensive system of collective bargaining agreements with school teachers for the benefit of the entire state and its pupils. Under this analysis, the school district would be estopped to deny the application of the collective bargaining agreement to this dispute because it would destroy the legislative intent of uniformity and the smooth operation of school districts.

This analysis is similar to the legislative intent in collective bargaining agreements with police officers and firefighters. The Legislature enacted 11 O.S.1981 § 51–101 et seq., which allows collective bargaining for members of the police department and the fire department. However, the right to strike is not accorded to the parties. In the public interest, the Legislature enacted a provision requiring grievance arbitration to prevent the chaos which would occur if the right to strike were recognized. These provisions provide for a uniform operation of labor negotiations with police and fire departments to ensure no interruption of service.[66]

## CONCLUSION

The dispute in this case concerns a provision in an existing collective bargaining agreement provision which requires sub-

---

**62.** *Voss v. City of Oklahoma City*, 618 P.2d 925, 928 (Okla.1980).

**63.** *Taylor v. Johnson*, 706 P.2d 896, 898 (Okla. 1985); *Garner v. City of Tulsa*, 651 P.2d 1325, 1328–29 (Okla.1982).

**64.** Title 70 O.S.Supp.1986 § 509.6, see note 8, supra.

**65.** Title 70 O.S.1981 § 6–101(D) see note 7, supra.

**66.** *Stone v. Johnson*, 690 P.2d 459, 461–62 (Okla. 1984).

mission of grievances under the terms of that agreement to binding arbitration.[67] Judicial determination of whether the parties agreed to arbitrate a dispute should be carefully exercised, and arbitration should not be denied unless the court is positive that the dispute is not covered by the arbitration clause. "Doubts should be resolved in favor of coverage." [68]

A decade ago, in *Voss v. City of Oklahoma City,* 618 P.2d 925, 927–28 (Okla. 1980), this Court acknowledged the majority view concerning grievance arbitration. We recognized four pertinent points which should be dispositive here: 1) The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when the parties have contracted for binding arbitration; 2) The arbitrator is a part of a system of self-government which the parties have created; 3) When the parties have contracted for binding grievance arbitration, it constitutes a substantive and mandatory right; and 4) There cannot be a valid arbitration without a binding submission to arbitration, or an impartial arbitrator. *Voss* is still the majority view, it is in the mainstream of arbitration jurisprudence, and it is controlling here.

The school board did not relinquish control of the school district by agreeing to a mandatory grievance arbitration provision. It exercised a power implicitly granted by the Oklahoma statutes, i.e., contracting with teachers, by the means of the collective bargaining agreement. Because a contract has been executed containing a provision for binding grievance arbitration, the school district is bound by its agreement. The grievance arbitration clause does not violate the Oklahoma Constitution, the statutes or public policy of this state. Rather, the employment agreement contains the ex-

pressed policy of the school district, and it should be enforced. Failure to do so will create a ripple effect which will impact on every public sector collective bargaining agreement in the State. I would affirm the trial court.

---

**67.** The Collective Bargaining Agreement, Article V, Grievance Procedure provides in pertinent part:
"A. Purpose
The purpose of this procedure is to secure, at the lowest possible level, equitable solutions to the problems which may from time to time arise affecting employees.
B. 1. A grievance is a claim by an employee that there has been a violation, misinterpretation, inequitable or otherwise improper applica-

**68.** *United Steelworkers v. American Mfg. Co.* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).